## THE PORTAGE LAKE BRIDGE COMPANY v. CHARLES A. WRIGHT, AS RECEIVER OF THE MINERAL RANGE RAILROAD COMPANY.

### Contract—Construction.

This case involves the construction of a contract by which a railroad company agreed to keep in repair the road-bed or roadway across the draw in a draw-bridge used by it, and a bridge company agreed to keep in repair the highway or roadway across said draw-bridge used exclusively by it, and it was mutually agreed that all other portions of said draw-bridge, its piers and abutments, should be maintained in common by both of the parties; and it is held that the wheels supporting the draw, upon which it rested and turned, were manifestly included with the "*other portions of the draw-bridge*" mentioned in the contract.

Error to Houghton. (Williams, J.) Argued November 14, 1889. Decided December 28, 1889.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Stone & Gray,* for appellant.

*Allen F. Rees* (*T. L. Chadbourne* and *R. C. Ostrander,* of counsel), for plaintiff.

[The briefs of counsel are confined to a discussion of the true construction to be placed upon the contract.— REPORTER.]

SHERWOOD, C. J. This case comes before this Court upon special findings of the circuit judge.

The action was brought to recover for one-half of the money expended in repairing and replacing the bearing wheels under the draw in a draw-bridge, under a certain contract made between the parties for constructing, maintaining, and operating the bridge across Portage lake. The contract referred to, or so much of it as is material to this case, reads as follows:

"1. The said party of the first part [being the Portage Lake Bridge Company], in consideration of the sum of one dollar to it paid by said party of the second part, and of the covenants and agreements of said second party hereinafter mentioned, does hereby give and grant unto the said party of the second part, and to its successors and assigns, a right of way over and across the bridge of said first party, its piers, abutments, and approaches, for the purpose of constructing, operating, and maintaining a railroad, said right of way to be for a crossing for said railroad over said bridge, not exceeding thirty-two (32) feet in width on each side of the center line of the railroad of said second party, as the same is now surveyed, located, and staked out across said bridge; subject to the conditions hereinafter contained, and to continue during the life of the charter of said first party; and in case of the re-organization of said bridge company at the expiration of its charter, or a sale of its property and franchises for the purpose of re-organization, then the said

second party shall have the right to use said right of way under the terms of this agreement, and this agreement shall continue in force during the life of the charter of such re-organized or new company, as the case may be.

" 2. The said party of the second part is hereby authorized, and shall have the right, to enter upon said bridge, its piers, abutments, and approaches, at any time after January 1, 1886, for the purpose of constructing a new draw-bridge thereon, to consist of two decks or roadways, the lower one of which shall be for the use of said railroad company, and the upper one for the use of said bridge company. Said draw shall be constructed in a good, substantial, and workmanlike manner, and in such manner that when the same is closed it shall be available for both railroad and highway traffic. The expense of constructing said draw-bridge, together with all changes made necessary in the piers, abutments, and approaches of the bridge, shall be borne and paid by the said party of the second part.

" 3. The said party of the second part, in consideration of the premises, does hereby promise and agree to and with the said party of the first part, that it will, as soon as possible after the first day of January next, and its determination to purchase said right of way, proceed to construct a good and substantial double-deck draw-bridge upon the present piers and abutments of the bridge of said party of the first part across said Portage lake, and that it will cause the same to be completed at as early a day as practicable, and will have the same fully completed on or before the first day of April, 1886, and that said draw-bridge, when completed, shall be so constructed that when the draw is closed it shall be in condition for highway and railroad traffic. Said party of the second part further agrees that it will not allow any foot-passengers to cross that portion of said draw-bridge used by it in its railroad business, except the employés of said second party, when required to cross the same on the business of said company.

" 4. Said party of the first part further agrees that upon the construction and completion of said draw-bridge by said second party, as provided in this contract, it will operate and manage said draw-bridge, and pay all the expenses of the same. And the said party of the second part does hereby promise and agree to pay unto the said

party of the first part, for the purpose of re-imbursing it for the expense of operating said draw, and its loss of traffic by reason of the construction of said railroad across said bridge, an annual compensation of twenty-five hundred dollars, payable quarterly, the payment thereof to commence at the time of the completion and acceptance of said draw-bridge.

"5. It is further mutually agreed between the parties hereto that the said railroad company shall keep in repair the road-bed or road-way across said draw used by it, and that said bridge company shall keep in repair the highway or road-way across said draw-bridge used exclusively by it, and that all other portions of said draw-bridge, its piers and abutments, shall be maintained in common by both of the parties hereto, each party paying one-half the expense thereof.

"6. It is further mutually expressly agreed and understood between the parties hereto that, in case of any injury to said draw-bridge by reason of the collision therewith of any boats or water-craft navigating Portgage lake, the expenses of all repairs made necessary by any such collision shall be borne and paid equally by the parties hereto; and, in case any damages are recovered from any person or corporation injuring said draw-bridge, the same shall be divided equally between the parties hereto."

The circuit judge after finding the contract to be as above stated, and that the receiver of the railroad company was duly appointed, and that plaintiff was authorized to bring this suit, further found—

"That the iron wheels, for one-half of the expense of the repair and replacing of which this action was brought, were those upon which the draw or draw-bridge turned and swung upon the pier supporting the same, and were an essential part of said draw-bridge or draw, and as such were, under the contract in evidence, built and constructed by the said Mineral Range Railroad Company, and were no part of the road-bed or roadway across said draw used by said railroad company, nor any part of the highway or roadway across said draw-bridge used exclusively by the plaintiff.

"That said iron bearing wheels having worn out by the operation and turning of said draw-bridge, the said

plaintiff necessarily expended the sum of $238.14, in the months of January, February, and March, 1889, in repairing and replacing the same, and said plaintiff, before suit brought, duly requested the defendant to pay one-half of the expense, under the contract aforesaid which defendant refused to do.

"That the draw-bridge aforesaid, as constructed, could not be operated without the said iron bearing wheels, and the same are necessary to the operation or turning of the draw-bridge."

And upon the foregoing facts the said court finds, as matter of law, the following, viz.:

"1. That the defendant, as such receiver, is liable, under the said contract, to pay to the said plaintiff one-half of the money so expended by said plaintiff in making said repairs.

"2. That said plaintiff is entitled to a judgment against the said defendant as such receiver, by reason of the premises, for the sum of $119.07, with interest thereon from February 15, 1889, at six per cent. per annum, amounting to $121.17 damages, with cost of suit to be taxed."

With the facts found there is no contention, but the defendant's claim is upon the record that the facts found do not support the judgment, and that the defendant should have prevailed.

We are all satisfied that the conclusion of the circuit judge is correct, and that the judgment should stand. It seems quite plain, we think, what parts of the renewed structure should be repaired and maintained exclusively by each party, as well as what portions were to be maintained in common, each party paying one-half the expenses thereof. The contract says—

"That the said railroad company shall keep in repair the road-bed or roadway across said draw used by it, and said bridge company shall keep in repair the highway or roadway across said draw-bridge used exclusively by it, and that all other portions of said draw-bridge, its piers and abutments, shall be maintained in common by both

of the parties hereto, each party paying one-half the expense thereof."

The wheels supporting the draw, upon which it rested and turned, were manifestly included with the *"other portions of the draw-bridge"* mentioned in the contract, and which were to be maintained in common by the parties. The "operating and managing of the draw," meaning thereby the opening and closing of the same, as well as the diligence to be used in protecting and preserving it from injury and doing injury, was imposed upon and undertaken by the plaintiff, and for which it was to receive certain compensation specified in the contract, but this clause was never intended to cover or include the necessary repairing or replacing of any parts of the bridge embraced in the clause, *"other portions of the draw-bridge,"* found in the contract. These facts were found by the circuit judge, and we have no doubt correctly, and control the case.

The judgment at the circuit must be affirmed.

The other Justices concurred.